01

02

03

04

05             UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
06                      AT SEATTLE

07  SHERYL L. WEAVER,              )   CASE NO. C07-0892-JCC
                                   )
08         Plaintiff,              )
                                   )
09         v.                      )   REPORT AND RECOMMENDATION
                                   )   RE: SOCIAL SECURITY
10  MICHAEL J. ASTRUE,             )   DISABILITY APPEAL
    Commissioner of Social Security, )
11                                 )
           Defendant.              )
12  _____ )

13         Plaintiff Sheryl L. Weaver proceeds through counsel in her appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

15  plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing before an

16  Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record

17  (AR), and all memoranda of record, it is recommended that this matter be REMANDED for

18  further administrative proceedings.

19                      **FACTS AND PROCEDURAL HISTORY**

20         Plaintiff was born on XXXX, 1957. [1]   She earned a General Equivalency Degree and

21  _____

22         [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

attended college for one and a half years.  Plaintiff previously worked for two months as a florist.  That work ended due to an injury sustained on December 15, 1999, resulting in left lower extremity reflex sympathetic dystrophy, also known as complex regional pain syndrome.

Plaintiff filed an application for SSI benefits in October 2003, alleging disability since August 1, 2000 due to chronic complex pain syndrome of the foot and leg, depression, and migraines.  (AR 55-58, 101.)[2] Her application was denied initially and on reconsideration, and she timely requested a hearing.  ALJ Verrell Dethloff held a hearing on July 18, 2006, taking testimony from plaintiff.  (AR 481-504.)  ALJ Dethloff issued a decision finding plaintiff not disabled on September 29, 2006. (AR 13-21.).

Plaintiff timely appealed to the Appeals Council, which denied review (AR 6-8),  making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

---

official policy on privacy adopted by the Judicial Conference of the United States.  **Plaintiff's counsel is advised to refrain from including the month and day of birth in future filings**.

[2] A previous application, filed in June 2002 (AR 49-52) and denied in July 2002 (AR 31), was not appealed.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

02  determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's reflex

03  sympathetic dystrophy of the left foot severe.  He did not find the evidence to support the

04  existence of severe depressive or anxiety disorders.  Step three asks whether a claimant's

05  impairments meet or equal a listed impairment.  The ALJ found that plaintiff's impairments did not

06  meet or equal the criteria for any listed impairment.

07      If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

08  residual functional capacity (RFC) and determine at step four whether the claimant has

09  demonstrated an inability to perform past relevant work.  The ALJ found plaintiff capable of

10  performing in the sedentary range of physical exertion, with an ability to lift and carry ten pounds

11  occasionally and less than ten pounds frequently, and an ability to stand/walk for two hours and

12  to sit for six hours in an eight hour day.  He also found that she had limited use of her left lower

13  extremity, meaning she could not climb ladders, ropes, or scaffolds, could not balance or crouch,

14  and needed to avoid extreme cold, extreme heat, and hazards such as heights and dangerous

15  machinery.  With this RFC, the ALJ found plaintiff unable to perform her past relevant work.

16      If a claimant demonstrates an inability to perform past relevant work, the burden shifts to

17  the Commissioner to demonstrate at step five that the claimant retains the capacity to make an

18  adjustment to work that exists in significant levels in the national economy.  Considering the

19  Medical-Vocational Guidelines, the ALJ found plaintiff not disabled.  In so finding, he concluded

20  that the additional limitations in the RFC finding had little to no effect on the occupational base

21  of unskilled sedentary work.

22      This Court's review of the ALJ's decision is limited to whether the decision is in

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  accordance with the law and the findings supported by substantial evidence in the record as a

02  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

03  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

04  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

05  (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

06  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

07  2002).

08        Plaintiff argues that the ALJ erred in discounting multiple psychological opinions by

09  examining physicians, questioning her credibility, and in failing to accept the opinion of her

10  treating physician. Her arguments imply errors at steps two through five of the ALJ's decision.[3]

11  Plaintiff requests a remand for an award of benefits or, alternatively, for further administrative

12  proceedings. The Commissioner argues that the decision is supported by substantial evidence and

13  should be affirmed.

14        The Court has discretion to remand for further proceedings or to award benefits.   *See*

15  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits

16  where "the record has been fully developed and further administrative proceedings would serve

17  no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

18  _____

19        [3] In the Briefing Scheduling Order, the Court directed plaintiff to "set forth [her] contentions as to each and every issued raised" in an opening brief. (Dkt. 9.) However, plaintiff's

20  four and a half page opening brief jumbles together all of her arguments in a single section and contains predominantly generalized assertions of error. (Dkt. 11.) She did not submit the optional

21  reply. **Plaintiff's counsel is advised to raise specific and detailed assignments of error in future filings with this Court. For instance, should a claimant allege that the ALJ erred in**

22  **rejecting a physician's opinion, plaintiff's counsel should identify and discuss the specific ways in which the ALJ erred.**

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01       Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
02       must be resolved before a determination of disability can be made; and (3) it is clear
from the record that the ALJ would be required to find the claimant disabled if he
03       considered the claimant's evidence.

04 *Id*. at 1076-77.  As discussed below, the undersigned finds a remand for further administrative

05 proceedings appropriate in this case.

06 Physicians' Opinions

07       In general, more weight should be given to the opinion of a treating physician than to a

08 non-treating physician, and more weight to the opinion of an examining physician than to a non-

09 examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted

10 by another physician, a treating or examining physician's opinion may be rejected only for "'clear

11 and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

12 Where contradicted, a treating or examining physician's opinion may not be rejected without

13 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

14 *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  "The opinion of

15 a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection

16 of the opinion of either an examining physician or a treating physician."  *Id.* at 831 (citing *Pitzer*

17 *v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler*, 753 F.2d 1450, 1456

18 (9th Cir. 1984).)  However, "the report of a nonexamining, nontreating physician need not be

19 discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews v. Shalala*,

20 53 F.3d 1035, 1041(9th Cir.1995) (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original).)

21       Here, plaintiff argues that the ALJ erred in rejecting the opinions of both treating and

22 examining physicians.  These arguments entail a direct critique of the ALJ's step three finding,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  RFC assessment, and conclusion at step five, and implicitly challenge the ALJ's findings at step

02  two.

03  A.       Examining Physicians – Mental Impairments

04          Plaintiff points to findings from several examining mental health professionals.  She notes

05  that Dr. Kevin Morris, who assessed depressive and anxiety disorders in April 2002, found her

06  markedly limited in several respects, including in the ability to perform routine tasks, to relate

07  appropriately to coworkers and supervisors, to interact appropriately in public contacts, and to

08  respond appropriately to and tolerate the pressures and expectations of a normal work setting.

09  (AR 331-34.)  He also noted "very severe physical limitations" and found it "unlikely" that

10  intervention would restore plaintiff's ability to work.  (AR 333-34.)

11          Plaintiff next directs the Court's attention to the February 2004 evaluation of Dr. Chris

12  Wilson, who diagnosed her with major depressive disorder and panic disorder with agoraphobia.

13  (AR 345-50.) Considering plaintiff's depression and panic attacks in combination with her chronic

14  pain symptoms, Dr. Wilson found it unlikely plaintiff would be able to perform work activities on

15  a consistent basis.  (AR 350.)

16          Finally, plaintiff points to a January 2005 examination by Dr. Ronald Early.  (AR 406-16.)

17  Dr. Early diagnosed major depressive disorder, panic disorder with agoraphobia, and anxiety

18  disorder, and found her "totally and permanently disabled" from employment as a result of the

19  combined effects of her pain disorder and the mental health diagnoses.  (AR 414-16.)

20          Plaintiff argues that the opinions of these physicians demonstrate that she meets the

21  requirements at step three for two listings – 12.04 (affective disorders) and 12.06 (anxiety-related

22  disorders) – based on her marked restrictions in her activities of daily living, maintaining social

01  functioning, and maintaining concentration, persistence, and pace.  She alternatively argues that

02  her depression and anxiety present such severe limitations that a sedentary level of work is beyond

03  her ability.

04         The Commissioner argues that the ALJ properly assessed the opinions of these physicians

05  and relied on contrary opinions and evidence in the record.  He rejects the contention that the

06  evidence supports a step three listing-level impairment and avers that the ALJ properly deemed

07  plaintiff's depressive disorder and anxiety disorder not severe.

08         In considering plaintiff's mental impairments, the ALJ found as follows:

09  The medical record has also referred to mental impairments.  For instance, Kevin
    Morris, Psy.D., in completing forms for the Washington State Department of Social
10  and Health Services (DSHS) stated that the claimant had a depressive disorder NOS
    and an anxiety disorder NOS, which were both secondary to reflex sympathetic
11  dystrophy.

12  However, the medical evidence has not shown that any depression or anxiety have
    adversely impacted the claimant's ability to perform basic work activities.  In a mental
13  residual functional capacity assessment of the claimant by William Reade, Ph.D., in
    March 2004 and a reassessment by Alex Fisher, Ph.D., in May 2004, the claimant's
14  mental status examination findings were described as benign.  After studying the
    medical evidence, these doctors noted that the claimant was only slightly anxious and
15  only slightly depressed.  She was able to drive, shop and go out alone.  She
    participated in such activities as emailing, fix meals and accomplish what she sets out
16  to do.  Besides her normal activities of daily living, the claimant has no restrictions in
    social functioning or adaptation.

17
    Although Drs. Reade and Fisher found moderate difficulties in maintaining
18  concentration, persistence and pace in their completion of a psychiatric review
    technique form (PRTF), they did not provide evidentiary support for this conclusion
19  in either this document or in the mental residual functional capacity assessment.
    Accordingly, the Administrative Law Judge rejects this one conclusion from these
20  medical consultants.

21  It is true that Dr. Morris listed a host of work-related limitations while filling out the
    DSHS form in April 2002.  However, he did not provide objective medical findings
22  to support these limitations.  Furthermore, Dr. Morris is not a treating source: the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01   claimant only saw this physician once.

02   And it is also true that Chris Wilson, M.D., listed diagnoses of major depressive
     disorder and panic disorder with agoraphobia after examining the claimant in February
03   2004.  Yet, his findings were inconsistent with any mental impairment that would
     prevent the claimant from performing basic work activities.  Dr. Wilson noted the
04   claimant, who was cooperative, had normal speech and cohesive and organized
     thought.  Although the claimant complained about being depressed, she appeared to
05   be only slightly depressed and anxious, Dr. Wilson observed.  She was oriented and
     her memory was intact.  Testing showed that the claimant was able to spell "world"
06   forward and backward and that she was able to execute a three step command.

07   Thus, it was inconsistent for Dr. Wilson to declare that the claimant would struggle
     with the performance of even simple and repetitive tasks and that she was unlikely to
08   perform work activity on a consistent basis in the near future.

09   The Administrative Law Judge also acknowledges that Ronald Early, Ph.D., M.D.,
     in performing an examination of the claimant in January 2005 concluded that she had
10   a major depressive disorder, a panic disorder with agoraphobia, and an anxiety
     disorder NOS.  Dr. Early also stated that the claimant was ". . . totally and
11   permanently disabled from meaningful and gainful employment as a result of pain and
     impairments related to her feet in combination with chronic and severe symptoms with
12   her psychological disorders".

13   But once again the conclusions from a doctor do not match the medical findings.  In
     examining the claimant, Dr. Early reported the existence of good social judgment.
14   And this doctor stated that the claimant exhibited only a mildly constricted affect and
     depressive mood and that there was no indication of extreme anxiety.
15
16   In 2006, the claimant was distraught and disorientated and agitated, but these
     symptoms stemmed from particularly stressful events such as the impending visit of
     her boyfriend's troublesome child and the eventual breakup of her relationship with
17   her boyfriend.  The claimant failed to establish any anxiety disorder or any depressive
     disorder as a severe impairment.
18

19   (AR 15-17; internal citations to record omitted.)

20        Outside of a general argument that the ALJ erred in discounting the opinions of examining

21   physicians and a specific argument that those opinions reflect the existence of a listing-level

22   impairment at step three, plaintiff provides little guidance to the Court as to the ways in which the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  ALJ allegedly erred.[4]  In any event, the Court finds the ALJ's decision troubling in several

02  respects.

03          First, although plaintiff fails to specifically argue as such, it is questionable whether the

04  ALJ appropriately determined that plaintiff's depression and anxiety disorders were not severe.

05  At step two, a claimant must make a threshold showing that his medically determinable

06  impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*,

07  482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers

08  to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

09  "An impairment or combination of impairments can be found 'not severe' only if the evidence

10  establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability

11  to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling

12  (SSR) 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless

13  claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the

14  "combined effect" of an individual's impairments in considering severity.  *Id*.

15          In this case, there was evidence from three examining physicians supporting the severity

16  of plaintiff's mental impairments.  Even if the ALJ did not agree that these impairments prohibited

17  plaintiff from working, the medical evidence provided support for the conclusion that they

18  established more than a slight abnormality.[5]  It is also not clear that the ALJ adequately considered

19  _____

20          [4] *See supra* n. 3.

21          [5] Although the failure to find an impairment severe at step two may be considered harmless
    error where the ALJ considered any associated limitations at step four, *Lewis v. Astrue*, 498 F.3d
22  909, 911 (9th Cir. 2007), the ALJ in this case did not consider limitations associated with
    plaintiff's mental impairments at the fourth step of the sequential evaluation process.  (*See* AR

01  these conditions in combination with plaintiff's physical impairments.  In contrast, all of the

02  examining physicians discussed the connection between plaintiff's physical and mental

03  impairments.  (*See* AR 332-34, 350, 414-16.)

04      Second, the ALJ in this case failed to provide sufficient reasoning for rejecting the opinions

05  of the examining physicians. The ALJ noted that Dr. Morris did not provide objective medical

06  findings and only examined plaintiff once, but relied on the alternative opinions of reviewing

07  physicians who never once examined plaintiff.  He also rejected the one finding of those reviewing

08  physicians that supported the existence of limitations related to mental impairments as lacking in

09  evidentiary support, but accepted their other findings without similar criticism.  Additionally, Dr.

10  Morris did attach some documentation reflecting testing.  (AR 335-43.)  It is difficult to read, but

11  this documentation reflects that Dr. Morris found "some difficulties" on testing for short-term

12  memory and noted "[unintelligible] anxious presentation near tears at times."  (AR 337, 340.)

13      With respect to Dr. Wilson, the ALJ failed to discuss the fact that this physician's opinion

14  stemmed from his consideration of plaintiff's mental impairments together with her physical

15  impairments.  Specifically, Dr. Wilson opined:

16  This claimant likely would struggle with performing even simple and repetitive tasks,
    not secondary to intellectual difficulties, but because it appears that she is unable to
17  sustain any activity for much time at all, given her chronic pain symptoms.  It is likely
    that she could accept instructions from supervisors and interact quite well with
18  coworkers and the public, but given her chronic pain symptoms, it is unlikely that she
    will be able to perform work activities on a consistent basis in the near feature.  It is
19  likely that her symptoms of depression and panic attacks, in addition to her chronic
    pain symptoms would make it very difficult for her to maintain regular attendance in
20  a workplace and her symptoms of agoraphobia related to her panic attacks would also
    make it difficult for her to engage in extensive public activities.  It is likely that the

21

22  18-20.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  usual stressors encountered in competitive work would impact her psychiatric

02  condition.

03  (AR 350.)  Although Dr. Wilson did observe plaintiff to be only "slightly depressed and slightly

04  anxious" during the interview (AR 348), his conclusions were not necessarily inconsistent with his

05  findings given the above.

06  Lastly, in dismissing Dr. Early's opinions as not matching his medical findings, the ALJ

07  ignored some of this physician's findings.  The ALJ focused on Dr. Early's observation of good

08  "social judgment" and "mildly constricted affect and depressed mood[,]" with "no indication of

09  acute anxiety during the course of the evaluation."  (AR 16-17 and 411-12.)  However, he made

10  no mention of Dr. Early's testing results, including plaintiff's placement in the "severe range of

11  depression[]" on the Beck Depression Inventory and a valid profile "consistent with diagnoses of

12  both anxiety and depression as well as prominent focus on somatic complaints[]" on the Million

13  Clinical Multiaxial Inventory III test.  (AR 411.)  Dr. Early later stated:

14  In today's evaluation, this lady continues to have symptoms of depression and anxiety,
    which are clearly evident and documented in the two psychometric test instruments
15  as indicated above.  In addition, clinical testing is consistent with a severe depressive
    disorder.  Although she had no acute panic attacks in this evaluation session she was
16  accompanied by her boyfriend who was in the next room and she was in an
    environment where she would typically feel safe.

17

18  (AR 413.)  Also, considering the combined effects of plaintiff's physical and mental impairments,

19  Dr. Early indicated there was "overwhelming evidence" supporting the conclusion that plaintiff

20  could not maintain and sustain gainful employment.  (AR 415-16.)

21  Given all of the above, the Court concludes that neither the ALJ's step two decision, nor

22  his evaluation of the examining physicians' opinions can be said to be supported by substantial

01   evidence.  Reversible errors at these steps also requires further assessment at all subsequent steps

02   of the sequential evaluation.  For example, plaintiff's RFC would likely be implicated and the ALJ

03   would presumably not be able to rely solely on the Medical-Vocational Guidelines at step five

04   given possible limitations associated with mental impairments.  *See, e.g., Tackett v. Apfel* , 180

05   F.3d 1094, 1101-04 (9th Cir. 1999) ("The ALJ may rely on the grids [(or Medical-Vocational

06   Guidelines)] alone to show the availability of jobs for the claimant 'only when the grids accurately

07   and completely describe the claimant's abilities and limitations.'"; where a claimant has a

08   significant limitation not contemplated by the Medical-Vocational Guidelines, an ALJ must call

09   a vocational expert) (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).

10            However, it does not follow that the opinions of these physicians are appropriately credited

11   as true.  *Compare Lester*, 81 F.3d at 830-34  ("Where the Commissioner fails to provide adequate

12   reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that

13   opinion as 'a matter of law.'"; finding that, if doctors' opinions and plaintiff's testimony were

14   credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498,

15   502 (9th Cir. 1989)), *with Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (courts retain

16   flexibility in applying the "'crediting as true' theory.''; remanding for further determinations where

17   there were insufficient findings as to whether plaintiff's testimony should be credited as true).  The

18   one physician whose opinions clearly support the conclusion that plaintiff meets a listing – Dr.

19   Morris – provided the least amount of supporting information; he completed a form, as opposed

20   to the more extensive evaluation reports from Drs. Wilson and Early.  The evaluations from Drs.

21   Wilson and Early are both supportive of an ultimate disability finding, but do not make specific

22   findings as to the criteria for the relevant listings.  Moreover, a review of the record as a whole

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  does not support the conclusion that the record is fully developed and a finding of disability clearly

02  required.  *See*, *e.g.*, *Connett*, 340 F.3d at 876.

03        In sum, the undersigned recommends that this matter be remanded for further proceedings.

04  On remand, the ALJ should contact the examining physicians for further information and, if

05  necessary, call his own medical expert in further considering plaintiff's claim.

06  B.    <u>Treating Physician – Physical Impairments</u>

07        Pointing to a January 2004 report (AR 372), plaintiff states that her treating physician for

08  her pain syndrome, Dr. Jeffrey Christensen, has consistently indicated that she would not be able

09  to sustain employment.  She avers that the ALJ's conclusion that she could perform the physical

10  requirements of sedentary work are inconsistent with both Dr. Christensen's opinion and her own

11  testimony.

12        In considering plaintiff's physical impairments, the ALJ adopted the physical RFC

13  assessment of reviewing physician Dr. Alnoor Virji.  (AR 17.)  Dr. Virji's assessment was

14  consistent with an ability to perform sedentary work, with added restrictions of an inability to

15  climb ladders, ropes, or scaffolds, or to balance or crouch, and the need to avoid extreme cold,

16  extreme heat, and hazards such as heights and dangerous machinery.   (AR 253-58.)

17        In adopting Dr. Virji's findings, the ALJ rejected Dr. Christensen's opinions, stating:

18        . . . In January 2004, this doctor made the following statement:

19            "The patient, on paper, seems capable of sustaining a sedentary job.
              However, in considering the overall picture, in her current state, where she
20            has spontaneous flares which are only relieved by long periods of rest, Ms.
              Weaver would not be able to sustain employment"

21

22        In other statements, Dr. Christiansen reported that the claimant was "severely limited"
          by being unable to lift at least 2 pounds or being unable to stand and that her

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01    condition was not under control and was progressive.

02    But this conclusion of an inability to work is contrary to other opinions from this
      doctor. For instance, podiatrist Christensen reported in March 2003 that the claimant
03    was able to perform at the sedentary level. Three months later, this doctor concluded
      that the claimant needed training for sedentary work, thereby indicating her ability to
04    perform at that exertional level.

05    Thus, the impression of Dr. Christensen is that he adopted the role of advocate for the
      claimant, rather than the role of a physician guided by medical findings and tests and
06    reports. His opinion is given little weight.

07    (AR 17-18; internal citations to record omitted.)

08         As asserted by respondent, where the ALJ provides specific and legitimate reasons

09    supported by substantial evidence in the record for so doing, he may rely on the contradictory

10    opinions of non-examining physicians. Indeed, an ALJ must consider the opinions of state agency

11    reviewing physicians. *See* SSR 96-6p ("Because State agency medical and psychological

12    consultants . . . are experts in the Social Security disability programs, the rules in 20 CFR

13    404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider

14    their findings of fact about the nature and severity of an individual's impairment(s) as opinions of

15    nonexamining physicians and psychologists. [While not bound by them,] they may not ignore these

16    opinions and must explain the weight given to the opinions in their decisions.") Also, here, the

17    ALJ did point to two possibly contradictory pieces of evidence from Dr. Christensen in the record.

18    (*See* AR 376, 378.)

19         However, it should be noted that the ALJ accepted the opinion of a one-time reviewing

20    physician over that of plaintiff's treating physician. Further, the perceived contradictory evidence

21    from Dr. Christensen is not particularly compelling, or necessarily contradictory, upon close

22    examination. First, although in a June 2003 chart note Dr. Christensen indicates plaintiff had

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01   "reached a point of medical stability" and required training for sedentary work, he one month later

02   noted that plaintiff's condition had flared, with "much swelling and pain," associated nausea, and

03   some blistering.  (AR 376.)  As reflected in a detailed letter Dr. Christensen wrote in relation to

04   plaintiff's L&I claim, and which the ALJ quoted, he considered that the overall picture reflected

05   "spontaneous flares which are only relieved by long periods of rest," resulting in plaintiff's inability

06   "to sustain employment." (AR 372 (Dr. Christensen added: "Her flare-ups are incapacitating and

07   for this very reason she had to withdraw from her volunteer job at the Evergreen State Fair.  At

08   times she could tolerate work activities for no more than two hours and would have to simply go

09   home to recover.  Work durability is a strong issue regarding her condition and her ability to work.

10   The patient has demonstrated that she is motivated and able to tolerate baseline levels of intense

11   pain, but reaches levels of pain so severe as to risk worsening damage to her foot.  Flares then can

12   develop which can take 7-10 days to recover.  At this point her foot posture changes and skin

13   sores occur.")) Second, on the March 2003 form on which Dr. Christensen indicated plaintiff was

14   capable of exertional work at a sedentary level, he also estimated that she would be unable to

15   perform at least half-time in a normal day-to-day setting for twenty to twenty five weeks and that

16   the estimated date she could be released to work was "undetermined[.]" (AR 378.)

17        Accordingly, as with the examining physicians' opinions, the ALJ's assessment of the

18   opinions of Dr. Christensen was insufficient.  Again, however, the Court does not find it

19   appropriate to credit Dr. Christensen's opinions as true.  Instead, the ALJ should further consider

20   the opinions of Dr. Christensen on remand.

21                                        <u>Credibility</u>

22        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01 reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See*

02 *also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an

03 ALJ must render a credibility determination with sufficiently specific findings, supported by

04 substantial evidence. "General findings are insufficient; rather, the ALJ must identify what

05 testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

06 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her

07 conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

08 *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

09 ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

10 his testimony and his conduct, his daily activities, his work record, and testimony from physicians

11 and third parties concerning the nature, severity, and effect of the symptoms of which he

12 complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

13      At hearing, plaintiff testified that she could not work because she was not reliable, that she

14 could not sit or stand for more than fifteen minutes at a time, that she laid down for hour long

15 periods several times a day, that she experienced headaches, anxiety, and depression, and that she

16 was also now experiencing numbness in her left hand and arm. (*See generally* AR 471-504.) In

17 considering plaintiff's testimony, the ALJ found as follows:

18
19     After considering the evidence of record, the undersigned finds that the claimant's
    medically determinable impairments could reasonably be expected to produce the
    alleged symptoms, but that the claimant's statements concerning the intensity,
    persistence and limiting effects of these symptoms are not entirely credible.
20
21     A number of normal medical findings are present in the record. In June 2001, G. De
    Andrea, M.D., and Allan Wilson, M.D., reported that the claimant had a symmetrical
    gait, as well as a stable ankle to varus/valgus testing. This doctor noted that the
22     claimant's EMG of the left lower extremity was normal. The claimant has

experienced periods of improvement in which her condition is stable or improved or progressing along quite well and in which she is able to ambulate reasonably well.

And exacerbations of the claimant's condition are traced to her participation in strenuous activities. According to a chart note from Dr. Christensen in August 2002, the claimant had a flare of her reflex sympathetic dystrophy (RSD) after working at the Stanwood Fair. In May 2005, the claimant complained about severe pain, but also reported that she had been " . . . doing a lot of gardening."

The claimant engages in daily activities that do not support the degree of physical dysfunction that she has alleged. At the hearing, she testified that she uses an exercise bike for five minutes. She also testified that she took her dog for a walk and did projects around her home, although pacing herself in the performance of tasks. During the time in which she alleged she was unable to work, the claimant served as the superintendent of the horticulture department at the Evergreen State Fair in 2003 and 2004. In this job, she hired judges, wrote newspaper ads, and ran a contest. As noted earlier in the decision, she also worked at the Stanwood Fair as the superintendent of the dog ring, which required a number of tasks including the hiring of judges. Thus, the claimant has been able to perform many tasks in a work setting during the time in which she alleged she was unable to work.

And as early as 1999, the claimant admitted to using a treadmill for 20 to 25 minutes 5 days a week, as she pushed herself through the pain.

Some degree of exaggeration has been suggested in the medical record. As early as 1999, Clayton Brandes, M.D., stated that the claimant's global tenderness seemed "somewhat out of proportion". And according to Drs. De Andrea and Wilson, there was a suspicion of functional overlay with giveaway weakness in all movements of the left foot.

The claimant's own statements indicate that her RSD is within her control. In August 2003, she told Dr. Christensen that she was ". . . pleased with her ability to control her disease with her own will".

Her credibility is damaged by her work history. In completing her Work History Report, the claimant declared that during the past 15 years she had only worked as a floral superintendent at the Evergreen State Fair for two weeks each year from 1996 to 2001. This job was a volunteer position. She also reported that she had, at times, cleaned houses from 1998 to 1999. And she worked as a florist at a grocery store from November 1999 to December 1999.

Thus, the claimant has no work history to speak of. She had barely begun employment at the QFC store when she had an accident that became the focus of her

01  life.  This focus on disability was accompanied by the claimant's dependence on
02  narcotic medications to the extent that she received medications from several different
    physicians, leading to her entrance into a treatment program.

03      For all of these reasons, the claimant's testimony was not convincing.

04  (AR 19-20; internal citations to record omitted.)

05      Plaintiff generally challenges the credibility finding, but does not raise any specific

06  arguments.  As argued by respondent, the Court concludes that the ALJ provided clear and

07  convincing reasons for not finding plaintiff entirely credible.  The ALJ appropriately pointed to

08  inconsistencies between plaintiff's testimony and her conduct, activities, and other evidence in the

09  record.  *Light*, 119 F.3d at 792.  He also appropriately considered her poor work history, *Thomas*,

10  278 F.3d at 958-59, as well as evidence of exaggeration, *Tonapetyan v. Halter*, 242 F.3d 1144,

11  1148 (9th Cir. 2001).  Taken as a whole, therefore, the ALJ's credibility finding withstands

12  scrutiny.

13      However, given the errors described above, the ALJ's credibility assessment is necessarily

14  implicated and will require further consideration on remand.  Likewise, on remand, the ALJ should

15  reconsider both plaintiff's RFC and her ability to perform other work in the national economy at

16  step five.

17  **CONCLUSION**

18      For the reasons set forth above, this case should be REMANDED for further

19  administrative proceedings.  On remand, the ALJ should reassess plaintiff's claims, considering

20  the deficiencies outlined in this Report and Recommendation.  A proposed order accompanies this

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01 Report and Recommendation.

02      DATED this <u>12th</u> day of December, 2007.


                                        Mary Alice Theiler
                                        United States Magistrate Judge

03

04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19